UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS LAGOS,<br><br>    Plaintiff,<br><br>    v.<br><br>THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>    Defendant. | Case No. 15-cv-04524-KAW<br><br>**ORDER RE SUPPLEMENTAL BRIEFING ON PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**<br><br>Re: Dkt. No. 62 |

The Court has reviewed Plaintiff Thomas Lagos's motion for preliminary approval, and hereby orders the parties to provide a joint supplemental brief regarding the following issues. The supplemental briefing should be filed no later than **March 2, 2017**.

### A. Attorney's Fees

Plaintiff's counsel intends to seek an award of one-third (33⅓%) of the Gross Settlement Fund as the Fee Award, plus reimbursement of reasonable and actual expenses, not to exceed $12,000, as the Costs Award. (Plf.'s Mot. at 5, Dkt. No. 63.) Plaintiff shall provide specific, non-conclusory information as to why a departure from the 25% benchmark is appropriate (*e.g.*, how the issues in this case were particularly difficult, complex, or novel). *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2012).

### B. Range of Reasonableness

At the preliminary approval stage, courts in this district "have stated that the relevant inquiry is whether the settlement falls within the range of possible approval or within the range of reasonableness." *Cotter v. Lyft*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (internal quotation omitted). "In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is plaintiff's expected recovery

balanced against the value of the settlement offer." *Id.*; *see also O'Connor v. Uber Techs., Inc.*, Case No. 13-cv-3826, -- F. Supp. 3d --, 2016 WL 4398271, at *7 (N.D. Cal. Aug. 18, 2016). This determination "requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount." *Cotter*, 176 F. Supp. at 936 (citing *In re High-Tech Emp. Antitrust Litig.*, Case No: 11-cv-2509-LHK, 2014 WL 3917126, at *4 (N.D. Cal. Aug. 8, 2014). Furthermore, the Ninth Circuit has recognized that where no class has been formally certified, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Signs of collusion that the Court must consider include: (1) whether counsel receives a disproportionate distribution of the settlement, (2) where the parties negotiate a "clear sailing" provision for payment of attorneys' fees separate and apart from class funds; and (3) when the parties arrange for fees not awarded to revert to the defendants. *Id.*

Here, the proposed settlement is for $400,000; once the attorney's fees, costs, incentive award, and class administrative costs are excluded, the net settlement fund is estimated to be $212,167, resulting in a $13.82 recovery per class member. (Plf.'s Mot. at 5.) The instant case brings claims under the Fair Credit Reporting Act, which allows consumers to recover statutory damages in an amount between $100 and $1,000, in addition to attorney's fees. (*Id.* at 8; *see also* 15 U.S.C. § 1681n.) Thus, based on the 15,347 individuals in the class, the value of the case ranges from $1,534,700 to $15,347,000 in statutory penalties alone, separate and apart from attorney's fees. Plaintiff does not explain why a discount of over 70% is warranted in this case, *i.e.*, the specific risks faced by Plaintiff in moving forward with this case, the complexity and likely duration of further litigation, and the risk of maintaining class action status.[1] *See O'Connor*,

---

[1] In the Dion-Kindem declaration, class counsel states only that it has "taken into account the uncertainty and risk of further litigation, the potential outcome, and the difficulties and delays inherent in such litigation," but does not explain in detail what these risks and difficulties are. (Dion-Kindem Decl. ¶ 13, Dkt. No. 62-1.) The Dion-Kindem declaration also notes that

2

2016 WL 4398271, at *9; *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). Without such information, the Court cannot determine if the proposed settlement falls within the reasonable range of possible approval. Plaintiff must therefore explain what risks of litigation exist moving forward with this case, and provide relevant legal authority in support. Plaintiff must also address the *In re Bluetooth Headset Products Liability Litigation* factors identified by the Ninth Circuit.

### C.   *Cy Pres*

"The *cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011). Thus, a *cy pres* distribution "must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity." *Id.* The Ninth Circuit has cautioned that "[w]hen selection of *cy pres* beneficiaries is not tethered to the nature of the lawsuit and the interests of the silent class members, the selection process may answer to the whims and self interests of the parties, their counsel, or the court." *Id.* at 1039.

Here, the proposed settlement will donate any uncashed settlement compensation from the Settlement Fund to the Law Foundation of Silicon Valley. (Plf.'s Mot. at 9.) The parties must explain how the proposed *cy pres* distribution: (1) addresses the objectives of the Fair Credit Reporting Act, (2) targets the Plaintiff class, and (3) provides a reasonable certainty that any member will be benefited. *Nachshin*, 663 F.3d at 1040.

### D.   **Settlement Class Definition**

The Settlement Agreement defines the "Settlement Class" as "All individuals on whom, during the Covered Period, a consumer report for employment purposes was procured by Stanford. Excluded from the Settlement Class are all persons who are validly excluded from the Settlement Class." (Settlement Agreement at 7, Dion-Kindem, Exh. 1.) The Settlement Agreement does not

---

"numerous district courts throughout the country have found defendants such as Stanford not liable for the willful violation of the FCRA in other cases based on essentially identical allegations," but provides no examples of these cases, what the facts of those cases were, or the analysis of those courts. (Dion-Kindem Decl. ¶ 14.)

3

appear to explain who would be validly excluded from the Settlement Class. The parties must explain which individuals would be validly excluded from the Settlement Class.

### E. Negotiation of Check

The Settlement Agreement refers to the "negotiat[ion] of checks," but does not appear to explain what this negotiation would entail. (Settlement Agreement at 9.) The parties shall explain what negotiation of checks is.

### F. Class Action Fairness Act Notice

The Settlement Agreement provides that within ten days of Plaintiff filing the instant motion, Defendant shall serve upon the appropriate state officials of each state in which a settlement class member resides and upon the pertinent U.S. Attorney General for each state, a notice of this proposed settlement in accordance with the Class Action Fairness Act. (Settlement Agreement at 16.) The Settlement Agreement further provides that Defendant shall file a notice of compliance with the Court. (*Id.*) Defendant has not yet filed this notice of compliance; Defendant shall therefore file the notice of compliance as soon as practicable.

### G. Class Notice

The Settlement Agreement provides that the Settlement Administrator shall e-mail notice of the class action settlement to the class members, and that if the e-mail is undelivered, the Settlement Administrator shall mail a Post Card Notice. (Settlement Agreement at 11.) The parties shall explain why notice should not be provided by both e-mail and mail. The parties shall also explain why the full notice should not be provided by mail to individuals where the e-mailed notice was undelivered, as opposed to the Post Card Notice, which requires individuals to go to the website to obtain full information.

### H. E-mailed Class Notice (Exhibit B-1 of Settlement Agreement)

#### i. Notice of Class Action Settlement (Page 1)

On the first page of the notice, there should be a short statement regarding the expected average recovery per class member. It must be bolded.

#### ii. Why is This a Class Action? (Page 3)

The first sentence in this section states that the Court has determined that the "lawsuit can

be settled on a class-wide basis because it meets the requirements of *California* law governing class actions." (Emphasis added.) This sentence should be corrected to reflect that the Court is applying federal law.

### iii. What Claims Am I Releasing As Part of this Lawsuit? (Page 5)

The Settlement Agreement states that the settlement class members will be releasing any and all claims arising out of or relating to any of the acts, omissions, other conduct, or the facts alleged in the lawsuit. (Settlement Agreement at 14.) The Class Notice, however, states that "[t]his release is limited to claims that were actually pleaded in the complaint or could have been pleaded under state laws based on the facts alleged." The parties shall explain whether these statements are consistent, including whether there are any federal claims that could have been pled based on the facts alleged other than those actually pled in the complaint.

### iv. How Do I Get Out of the Settlement? (Page 6)

The Class Notice refers to an "Exclusion Request" form, but does not attach the form. The parties shall provide the "Exclusion Request" form.

### v. Additional Information

The Class Notice (as well as the Post Card Notice) states that the Settlement Agreement will be available at a website (to be added). The website must include not only the Settlement Agreement, but the operative complaint, as well as – in the event of preliminary approval – the Court's order granting preliminary approval, the motion for final approval, and Plaintiff's motion for attorney's fees and representative awards. Further, the motion for attorney's fees and representative awards must be filed and made available on the website at least 35 days prior to the final approval hearing date.

IT IS SO ORDERED.

Dated: February 17, 2017

_____
KANDIS A. WESTMORE
United States Magistrate Judge