UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS LAGOS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>　　　　Defendant. | Case No. 15-cv-04524-KAW<br><br>**ORDER DENYING MOTION FOR PRELIMINARY APPROVAL**<br><br>Re: Dkt. No. 62 |

Plaintiff Thomas Lagos filed the instant putative class action against Defendant The Leland Stanford Junior University, alleging that Defendant violated the Fair Credit Reporting Act ("FCRA"). (First Amended Compl., FAC, Dkt. No. 30.) The parties entered into a settlement, and on January 12, 2017, Plaintiff filed a motion for preliminary approval of the class action settlement. (Plf.'s Mot., Dkt. No. 63.) On February 17, 2017, the Court issued an order requiring that the parties file a joint supplemental brief addressing certain issues, including "whether the settlement falls within the range of possible approval or within the range of reasonableness." (Ord. at 1 (internal quotation omitted), Dkt. No. 66.) On March 2, 2017, the parties submitted the requested briefing. (Joint Supp. Briefing, Dkt. No. 68.) Upon consideration of the moving papers and supplemental brief, as well as the arguments presented at the March 16, 2017 motion hearing, and for the reasons set forth below, Plaintiff's motion is DENIED.

## I.   BACKGROUND

### A.   Litigation History

The FCRA generally prohibits an employer from procuring or causing to be procured a consumer report for employment purposes, unless:

　　　　(i) a clear and conspicuous disclosure has been made in writing to

>the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
>(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A). When a violation is "willful," the FCRA provides for statutory damages "of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(1)(A). The purpose of the disclosure and authorization provision was to address Congress's "concern[] that prospective employers were obtaining and using consumer reports in a manner that violated job applicants' privacy rights." *Syed v. M-I, LLC*, 846 F.3d 1034, 1038 (9th Cir. 2017.) Further, the disclosure and authorization provision "promotes error correction by providing applicants with an opportunity to warn a prospective employer of errors in the report before the employer decides against hiring the applicant on the basis of information contained in the report." *Id.*

In January 2015, Plaintiff applied for a job with Defendant. (FAC ¶ 14.) "As part of the application process, [Defendant] procured or caused to be procured a consumer report regarding Plaintiff from HireRight." (*Id.*) Plaintiff alleges that Defendant "willfully" violated the FCRA when it procured or caused to be procured a consumer report without making the required disclosure "'in a document that consists solely of the disclosure.'" (FAC ¶¶ 15-16 (quoting 15 U.S.C. § 1681b(b)(2)(i)).) Specifically, Plaintiff signed a four-page disclosure and authorization form; the form's first page states that Defendant may request a consumer report assembled by HireRight or another consumer reporting agency, and explains the type of information that may be contained in the background report. (*See* Dkt. No. 7-1, Exh. A at 1.) The form's second and third pages are entitled "Additional State Law Notices," and contain notices relating to consumer reports for applicants, employees, or contractors in California, Maine, Massachusetts, Minnesota, New Jersey, New York and Washington state. (*Id.* at 2-3.) The last page is entitled "Authorization of Background Investigation," which includes a consent to the preparation of a background check. (*Id.* at 4.) The second paragraph contains the disclaimer: "I also understand that nothing herein shall be construed as an offer of employment or contract for services." (*Id.*)

On October 6, 2015, Defendant moved to dismiss Plaintiff's claim, on the grounds that: (1)

2

1  Defendant's disclosure complied with FCRA requirements, and (2) challenging Plaintiff's ability to
2  show that Defendant "willfully" violated the FCRA. (Dkt. No. 7 at 2.) On December 4, 2015,
3  Judge Grewal denied Defendant's motion to dismiss, finding that Plaintiff had adequately alleged a
4  willful violation. (Dkt. No. 24 at 1, 4-5.)

On December 28, 2015, Defendant moved to stay the case pending the Supreme Court's decision in *Spokeo, Inc. v. Robins*. (Dkt. No. 27.) The parties then stipulated to stay the case. (Dkt. No. 28.) After the Supreme Court issued its decision in *Spokeo*, Judge Grewal lifted the stay on May 20, 2016. (Dkt. No. 34.) The case was then reassigned to the undersigned. (Dkt. No. 36.)

On November 22, 2016, the parties informed the Court that the case had settled. (Dkt. No. 53 at 1.) Plaintiff then filed the instant motion for preliminary approval of the class action settlement on January 12, 2017.

### B. Settlement Agreement

Under the terms of the settlement agreement, Defendant agrees to pay a Gross Settlement Fund of $400,000, in addition to one-half of the administration costs. (Dion-Kindem Decl., Exh. 1 at 7, "Settlement Agreement," Dkt. No. 62-1.) Of the $400,000 Gross Settlement Fund, Plaintiff's counsel intends to seek an award of one-third (33⅓%), or $133,333.33, as well as costs not to exceed $12,000. (*Id.* at 4.) The $400,000 Gross Settlement Fund also includes a $7,500 incentive payment to Plaintiff for his service as the named class representative, and up to $35,000 in class administration costs. (*Id.* at 5, 7.) This leaves a Net Settlement Fund of $212,166.67 for distribution to an estimated class of 15,347 members. (Plf.'s Mot. at 5.) Based on the Net Settlement Fund of $212,166.67, each class member will receive an estimated $13.82.[1]

Once the Court grants preliminary approval, the Settlement Administrator is responsible for e-mailing notice of the settlement to the class, using the class member's last known e-mail address.[2] (Settlement Agreement at 11.) If the e-mail is undelivered, the Settlement

---

[1] Based on the $400,000 Gross Settlement Fund, an individual member's pro rata share is $26.06.

[2] When class members applied for a position with Defendant, "each class member used an online portal to receive the disclosure at issue and to authorize the background check. Each member had to provide an email address to do so." (Joint Supp. Briefing at 23.)

3

1  Administrator will mail a Post Card Notice that summarizes the settlement and directs class
2  members to the Settlement Website for class members to get additional information. (*Id.*) If the
3  Post Card Notice is returned to the Settlement Administrator without a forwarding address, the
4  Settlement Administrator is responsible for using publicly available databases to find an updated
5  address and re-mail the notice. (*Id.* at 12.) There is no claims process; distribution of the
6  settlement fund is automatic.
7  Upon receiving notice, class members will have approximately 45 days from the e-mail or
8  mailing date to opt-out of the settlement. (*Id.*) An opt-out form will be provided to the class
9  members. (*See* Joint Supp. Briefing, Exh. 2.) Class members who do not opt out may also object
10 to the settlement. (Settlement Agreement at 13.)
11 Following final approval, the Net Settlement Fund will be distributed pro rata in the form
12 of a check to all class members who had not opted out of the settlement. (*Id.* at 8.) Class
13 members will have 180 days to cash or deposit the settlement checks. (*Id.* at 9.) Any checks that
14 are undeliverable, returned, uncashed, or not deposited after the 180-day period for negotiating
15 checks will be pooled and distributed on a pro-rata basis to the class members who timely cashed
16 or deposited their first checks. (*Id.*) After this second round of distribution, any remaining
17 settlement funds will constitute a *cy pres* fund and be donated to the Law Foundation of Silicon
18 Valley. (*Id.*) No money reverts back to Defendant.
19 As part of the settlement, class members who do not opt out of the settlement are agreeing
20 to release all claim that arise out of or relate to any of the acts, omissions, other conduct, or the
21 facts alleged in the lawsuit. (*Id.* at 14.) This release does not include workers' compensation,
22 personal injury, or discrimination claims, and does not affect agreements that class members may
23 have already entered into with Defendant. (Joint Supp. Briefing, Exh. 1 at 5.)

## II. LEGAL STANDARD

25 Per Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified
26 class may be settled, voluntarily dismissed, or compromised only with the court's approval." The
27 purpose of requiring court approval "is to protect the unnamed members of the class from unjust
28 or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th

1  Cir. 2008). Thus, before approving a settlement, the Court must conclude that the settlement is

2  "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026

3  (9th Cir. 1998). This inquiry:

> requires the district court to balance a number of factors: the
> strength of the plaintiff's case; the risk, expense, complexity, and
> likely duration of further litigation; the risk of maintaining class
> action status throughout the trial; the amount offered in settlement;
> the extent of discovery completed and the stage of the proceedings;
> the experience and views of counsel; the presence of a government
> participant; and the reaction of the class members to the proposed
> settlement.

*Id.*; *see also Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (same).

Furthermore, the Ninth Circuit has recognized that where no class has been formally certified, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ("when . . . the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness'"). This more "exacting review" is required "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane*, 696 F.3d at 819 (internal quotation omitted); *see also Hanlon*, 150 F.3d at 1026 ("The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court[-]designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e)").

When applying Rule 23(e), the courts use a two-step process for the approval of class action settlements. First, the Court decides whether the class action settlement deserves preliminary approval. Second, after notice is given to class members, the Court determines whether final approval is warranted. *See O'Connor v. Uber Techs., Inc.*, Case No. 13-cv-3826, -- F. Supp. 3d --, 2016 WL 4398271 at *8 (N.D. Cal. Aug. 18, 2016). At the preliminary approval

stage, courts in this district "have stated that the relevant inquiry is whether the settlement falls within the range of possible approval or within the range of reasonableness." *Cotter v. Lyft*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (internal quotation omitted). "In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is plaintiff's expected recovery balanced against the value of the settlement offer." *Id.*; *see also O'Connor*, 2016 WL 4398271, at *7. This determination "requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount." *Cotter*, 176 F. Supp. at 936 (citing *In re High-Tech Emp. Antitrust Litig.*, Case No: 11-cv-2509-LHK, 2014 WL 3917126, at *4 (N.D. Cal. Aug. 8, 2014).

### III.   DISCUSSION

#### A.   Range of Reasonableness: Pre-*Syed v. M-I, LLC*

In deciding whether the proposed settlement falls within the range of reasonableness, the Court must compare Plaintiff's expected recovery with the settlement offer. *See Cotter*, 176 F. Supp. 3d at 935. Here, the settlement provides for an estimated pro rata share of $13.82 per class member, after attorney's fees and costs, incentive award, and administration costs. (Plf.'s Mot. at 5.) As the FCRA provides for statutory penalties of $100 to $1,000 per willful violation, this represents a 86.18% discount based on the minimum statutory penalty of $100. The Court must therefore determine whether this 86.18% discount is justified by the relative strengths and weaknesses of Plaintiff's case.

To prove his case, Plaintiff must show: (1) Defendant's disclosure form violated the FCRA, and (2) Defendant's violation was willful. In *Peikoff v. Paramount Pictures Corp.*, the district court found no willful violation where the disclosure included the following certification: "I certify that the information contained on this Authorization form is true and correct and that my application may be terminated based on any false, omitted, or fraudulent information." Case No. 15-cv-68-VC, 2015 U.S. Dist. LEXIS 63642, at *2 (N.D. Cal. Mar. 26, 2015). The district court explained that the certification was "closely related" to the statutorily permitted authorization, and would serve "to focus the consumer's attention on the disclosure." *Id.* at *4 (internal quotation

1 omitted). Thus, even if inclusion of the certification "did not comply with a strict reading of § 1681b(b)(2)(A)'s requirement that the document consist solely of the disclosure and the authorization," the district court concluded that "it is not plausible that [the defendant] acted in reckless disregard of the requirements of the FCRA by using this language." *Id.* By contrast, in *Harris v. Home Depot U.S.A., Inc.*, the district court denied a motion to dismiss where the disclosure including a liability waiver releasing the defendant of any liability that it might incur in connection with the background check. 114 F. Supp. 3d 868, 869-70 (N.D. Cal. 2015). Contrasting the liability waiver with the certification in *Peikoff*, the district court observed:

> [I]n *Peikoff* the employer had nothing to gain (other than improving the chances that the background check would be accurate) by inserting the additional language into the disclosure form. And like the authorization, a certification is likely to focus the consumer's attention on the disclosure. But the employer does have something to gain (separate from the successful performance of a background check) by inserting a provision by which the applicant releases the employer from liability. So in this situation, it's plausible that [the defendant] inserted this language into the disclosure form despite knowing that to do so would violate the FCRA, or at least with reckless disregard for the FCRA's requirements.

*Id.* at 870 (internal quotation omitted).

Applying *Peikoff* and *Harris*, Judge Grewal denied Defendant's motion to dismiss in the instant case. First, Judge Grewal found that the seven state law notices and the disclaimer "plausibly violate Section 1681b(b)(2)(i)'s requirement that the FCRA disclosure be in a document consisting 'solely of the disclosure' (and the authorization form)." (Dkt. No. 24 at 4.) With respect to the state law notices, Judge Grewal expressed skepticism that the state law notices "give job applicants 'important relevant information that *contributes* to the required disclosure,'" observing that "the state law notices provide information about applicants' rights under the laws of seven states, not under the FCRA. It therefore is unclear how the state law notices contribute to the disclosure required by the FCRA." (*Id.* (internal modification omitted).) As to the disclaimer, Judge Grewal explained:

> Stanford candidly admitted at oral argument that its inclusion in the authorization form undermined Stanford's disclosure as a standalone form as required by the FCRA. The sentence does not serve to focus an applicant's attention on the FCRA disclosure, as it is unrelated to the FCRA's directive to state "that a consumer report

7

may be obtained for employment purpose."

(*Id.* (quoting 15 U.S.C. § 1681b(b)(2)(i)).)

Second, Judge Grewal concluded that Plaintiff had alleged sufficient facts to show that the FCRA violation was willful because the disclaimer:

> has nothing to do with the FCRA. It serves only to clarify that authorizing Stanford to obtain a background investigation does not mean the job applicant is receiving a job offer. It is unlikely to focus the applicant's attention on the FCRA disclosure, and it therefore is plausible that Stanford inserted this language into the disclosure form despite knowing that to do would violate the FCRA, or at least with reckless disregard for the FCRA's requirements.

(*Id.* at 5 (internal quotation omitted).)

Given Judge Grewal's prior ruling, it is not clear to the Court that an 86% discount was justified by the risks in this case.[3] In particular, the Court agrees with Judge Grewal that it is not apparent how the disclaimer is related to the FCRA, as it is not concerned with the privacy rights of the prospective employees or in promoting error correction in consumer reports. *See Syed*, 846 F.3d at 1038 (discussing the purpose of the FCRA). Instead, the disclaimer simply informs prospective employees that the disclosure and authorization form is not an offer of employment, a statement that appears to benefit *Defendant* by ensuring that prospective employees do not construe the authorization form as a job offer. Thus, the disclaimer seems more akin to the

---

[3] While other FCRA cases have settled for similar discounts, those settlements followed unfavorable rulings to the plaintiffs. For example, in *In re Toys R Us-Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litigation*, the district court approved a settlement in a case where the plaintiff alleged that Defendants violated a provision which required that "'no person that accepts credit card or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or the transaction.'" 295 F.R.D. 438, 444 (C.D. Cal. 2014) (quoting 15 U.S.C. § 1681c(g)). Following summary judgment, where the district court found a disputed issue of fact regarding willfulness, the parties entered into a settlement which provided that class members receive vouchers for $5 to $30, depending on the number of purchases they made at the defendants' stores during the class period. *Id.* at 447, 451. Similarly, in *Syed v. M-I, LLC*, the district court approved a settlement in a case where the plaintiff alleged that Defendants -- as in this case -- violated the FCRA by failing to provide the disclosure that did not comply with 15 U.S.C. § 1681b's requirement that the form consist "solely of the disclosure" because it included a liability waiver. No. CV 1:14-742 WBS BAM, 2016 WL 310135, at *1 (E.D. Cal. Jan. 26, 2016). After the district court dismissed the plaintiff's action against one of the defendants, finding that the plaintiff had failed to sufficiently plead willfulness, the parties entered into a settlement with the remaining defendant which provided that class members would each receive a net recovery of approximately $16. *Id.* at *1-2. Given the unfavorable rulings in these cases, which greatly increased the risk of Plaintiff succeeding on the merits, a deep discount was justified.

1 liability waiver at issue, as Defendant has "something to gain (separate from the successful

2 performance of a background check) . . . ." *Harris*, 114 F. Supp. 3d at 870.

### B. Range of Reasonableness: Post-*Syed v. M-I, LLC*

After the parties entered into the settlement agreement, the Ninth Circuit issued its decision in *Syed v. M-I, LLC*, 846 F.3d 1034. The parties dispute whether the Court should consider this opinion, as well as whether it has bearing on the instant case, *i.e.*, whether it affects the strengths and weaknesses of Plaintiff's case. Notably, at the hearing Plaintiff's counsel stated that they would not have agreed to the settlement if *Syed* had been issued earlier, and that they would not have recommended the instant settlement. (*See also* Joint Supp. Briefing at 19 (Plaintiff's counsel stating that "they would have acted differently had *Syed* been decided prior to the settlement agreement in the instant action"); *id.* at 8 ("Plaintiff contends that, *without considering the Ninth Circuit's Syed decision* . . . the settlement falls within the range of reasonableness because there is a risk that any violation, if found, would not be found to have been willful") (emphasis added).)

In *Syed*, the Ninth Circuit considered whether the inclusion of a liability waiver violates the FCRA's requirement that the disclosure document consist "solely" of the disclosure. 846 F.3d at 1039. First, the Ninth Circuit concluded that the inclusion of a liability waiver was a violation because the statute "unambiguously requires a document that 'consists solely of the disclosure.'" *Id.* at 1041. While it acknowledged that the statute permitted the disclosure document to include the authorization clause, this "does not mean that the statute contains other implicit exceptions as well." *Id.* at 1042. Instead, given that Congress had expressly allowed for the inclusion of an authorization, "the familiar judicial maxim *expression unius est exclusion alterius* counsels against finding additional, implied exceptions." *Id.* The Ninth Circuit therefore rejected the "contention that a liability waiver is an implicit exception to the 'solely' requirement in 15 U.S.C. § 1681b(b)(2)(A)(i)."

Second, the Ninth Circuit found that the violation was "willful as a matter of law." *Id.* at 1044. In so concluding, the Ninth Circuit applied the Supreme Court's decision in *Safeco*, where the Supreme Court had clarified that "under Section 1681n, willfulness reaches actions taken in 'reckless disregard of statutory duty,' in addition to actions 'known to violate the Act.'" *Id.*

9

1 (quoting *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 56-57 (2007)). In other words, "[a] party does not act in reckless disregard of the FCRA 'unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.'" *Id.* (quoting *Safeco*, 551 U.S. at 69). Applying this standard, the Ninth Circuit held that because "the FCRA unambiguously bars a prospective employer from including a liability waiver on a disclosure document provided [to] a job applicant pursuant to Section 1681b(b)(2)(A)," the defendant's "inclusion of a liability waiver in the statutorily mandated disclosure document comports with no reasonable interpretation of 15 U.S.C. 1681b(b)(2)(A)." *Id.* at 1044, 1045. The Ninth Circuit emphasized that "this is not a 'borderline case,'" and that the defendant "ran an 'unjustifiably high risk of violating the statute.' In other words, [the defendant] acted in 'reckless disregard of statutory duty," making its violation willful under 15 U.S.C. § 1681n. *Id.* at 1046.

In the instant case, Defendant, as an initial matter, contends that the Court cannot consider *Syed* because "'a post-settlement change in the law does not alter the binding nature of the parties' settlement agreement, nor does it violate Rule 23 of the Federal Rules of Civil Procedure.'" (Joint Supp. Briefing at 11 (quoting *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1089 (6th Cir. 2016)).) The Court's consideration of *Syed*, however, is not about whether the settlement agreement is binding or in violation of Rule 23. The Court's consideration of *Syed* goes directly to the strengths and weaknesses of Plaintiff's case, which in turn directly informs whether the settlement -- which includes an 86% discount on the value of the class's claims -- falls within the range of reasonableness. If *Syed* strengthens Plaintiff's case by suggesting that certain violations of § 1681b(b)(2)(A) are willful *as a matter of law*, Plaintiff's risk of not being able to recover statutory penalties falls correspondingly. If Plaintiff has a much stronger case due to binding precedent, then the 86% discount may no longer be justifiable, causing the settlement agreement to fall outside of the range of reasonableness. The Court therefore finds it appropriate to consider *Syed* in determining if the settlement falls within the range of reasonableness.[4]

---

[4] In the joint supplemental briefing, the parties also noted that the *Syed* defendant filed a petition seeking a panel rehearing and rehearing *en banc*. (Joint Supp. briefing at 19-20.) On March 20,

10

1  Next, Defendant argues that *Syed* is distinguishable because it concerned a liability waiver,
2  rather than state law disclosures or a disclaimer that the disclosure and authorization form is not an
3  offer of employment. (Joint Supp. Briefing at 12.) As discussed above, however, Judge Grewal
4  already analyzed the state law disclosures and disclaimer, and found the disclaimer, in particular,
5  to be more comparable to the liability waiver in *Harris* than the certification of truth in *Peikoff*,
6  explaining that "like the liability waiver, it has nothing to do with the FCRA." (Dkt. No. 24 at 5.)
7  Defendant cites to no other case that has found that similar state law disclosures or disclaimers are
8  more akin to the certification of truth in *Peikoff*. Instead, Defendant cites to *Just v. Target*
9  *Corporation*, which involved a similar disclaimer. (Joint Supp. Briefing at 14.) The *Just* court,
10 however, explicitly declined to decide whether the disclaimer violated the stand-alone disclosure
11 requirement. 187 F. Supp. 3d 1064, 1068 (D. Minn. 2016). Instead, the district court focused on
12 the willfulness aspect, concluding that it was not clear that the defendant's interpretation of the
13 statute was unreasonable because "the federal courts of appeal, the [administrative agency], and
14 the statutory text provide insufficient guidance about the meaning of the FCRA's stand-alone
15 disclosure requirement." *Id.* at 1070. This reading of the statute as being "less than clear" appears
16 to be at odds with the Ninth Circuit's decision in *Syed*, which concluded that "the FCRA
17 *unambiguously* bars a prospective employer from including a liability waiver on a disclosure
18 document provided [to] a job applicant pursuant to Section 1681b(b)(2)(A)." 846 F.3d at 1044
19 (emphasis added). *Syed*, of course, is binding on this Court, while *Just* is an out-of-circuit district
20 court opinion.[5]

21 Finally, Defendant argues that even if the disclosure and authorization form was

---

2017, the Ninth Circuit issued an amended order which expanded the analysis of standing, and denying the petition for panel rehearing and rehearing en banc. (*Syed v. M-I, LLC*, No. 14-17186, Order and Amended Opinion at 3-4, 12-13 (9th Cir. Mar. 20, 2017); *see* Dkt. No. 71.)

[5] After the hearing, Defendants provided the Court with the pre-*Syed* decision, *Noori v. Vivint, Inc.*, CV 16-5491 PA (FFMx), 2016 U.S. Dist. LEXIS 120963 (C.D. Cal. Sept. 6, 2016), which concerned the same authorization at issue in this case. (Dkt. No. 72.) The district court in *Noori*, however, did not consider the issue of the disclaimer, instead focusing only on the state law disclosures in determining whether the complaint stated a viable FCRA violation. *Noori*, 2016 U.S. Dist. LEXIS 120963, at *14-15. The plaintiff in *Noori* also did not allege a FCRA violation based on the disclaimer. (*See* Dkt. No. 72, Exh. A (*Noori* Compl.) ¶¶ 43-46.) As such, *Noori* is not persuasive here.

United States District Court
Northern District of California

1    objectively unreasonable and erroneous, it would not be liable because it relied upon the expertise

2    of a consumer reporting agency, HireRight, who held itself out as an expert in FCRA compliance.

3    (Joint Supp. Briefing at 18.) HireRight, Defendant contends, is the entity responsible for drafting

4    and utilizing the form, and had in fact changed the form multiple times without Defendant's

5    knowledge. (*Id.* at 19.) Defendant, however, cites to no case authority which suggests that an

6    employer can escape liability altogether by relying on the expertise of a third-party. Defendant

7    was also unable to identify any authority during the hearing. Absent any such authority, it is not

8    clear how this affects the strengths of weaknesses of Plaintiff's case.[6]

9    In total, given Judge Grewal's prior decision in this case and the Ninth Circuit's recent

10   decision in *Syed*, the Court finds that Plaintiff's case is not so weak so as to justify an 86%

11   discount. While the parties may dispute whether the state law notices and disclaimer are

12   comparable to the liability waiver, the reasoning in Judge Grewal's prior motion to dismiss order,

13   applying *Peikoff* and *Harris*, suggest Plaintiff's position is reasonably meritorious. Further, *Syed*

14   at the very least clarifies the requirements of § 1681b(b)(2)(A), and suggests that willfulness can

15   be found as a matter of law due to the unambiguous requirements of the statute. In light of these

16   developments, the Court concludes that the settlement agreement does not fall within the range of

17   reasonableness, and therefore DENIES Plaintiff's motion for preliminary approval.[7]

### IV.   CONCLUSION

19   The Court recognizes that the crux of a settlement is compromise, and that class actions

20   often (and necessarily) settle for less than the full value of a case. In this case, however, the Court

21   finds that the risks to Plaintiff's case are not so great as to warrant an 86% discount, which is a

22   significant decrease that must be justified only by substantial risks and weaknesses in a plaintiff's

---

[6] Notably, the *Syed* case appears to involve a similar situation where a second defendant, PreCheck, Inc., prepared and provided the disclosure and authorization form to the employer. *See Syed v. M-I LLC*, Civ. No. 1:14-742 WBS BAM, 2014 WL 5426862, at *1 (E.D. Cal. Oct. 23, 2012).

[7] Defendant also identifies risks in the certification process; many of these risks, however, go less to the merits of the case than the scope of the class. It is not clear that these risks would also justify an 86% discount, and Plaintiff's counsel makes clear that the decision to settle was based on the merits of the case, not by risks in the certification process. (*See* Joint Supp. Briefing at 20.)

case. This is particularly the case given the Ninth Circuit's recent decision in *Syed*, which changes the calculus of the strengths and weaknesses of Plaintiff's case. To be clear, the Court does not decide at this point whether *Syed* is dispositive in this case. Instead, it only recognizes that in light of *Syed*, Plaintiff's case is not so weak as to warrant so deep a discount.

For those reasons, the Court DENIES Plaintiff's motion for preliminary approval.

IT IS SO ORDERED.

Dated: March 24, 2017

_____
KANDIS A. WESTMORE
United States Magistrate Judge

13