UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS LAGOS,<br><br>    Plaintiff,<br><br>  v.<br><br>THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>    Defendant. | Case No. 15-cv-04524-KAW<br><br>**ORDER DENYING MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. No. 79 |

Plaintiff Thomas Lagos filed the instant putative class action against Defendant The Leland Stanford Junior University, alleging that Defendant violated the Fair Credit Reporting Act ("FCRA"). (First Amended Compl., FAC, Dkt. No. 30.) The parties entered into a settlement, and on January 12, 2017, Plaintiff filed a motion for preliminary approval of the class action settlement. (Dkt. No. 63.) On March 24, 2017, the Court denied the motion for preliminary approval. (Ord., Dkt. No. 73.) Defendant now moves for leave to file a motion for reconsideration of that order. (Def.'s Mot., Dkt. No. 79.) Having considered the papers filed by the parties and the relevant legal authority, the Court DENIES the motion for leave to file a motion for reconsideration.

## I. BACKGROUND

The FCRA generally prohibits an employer from procuring or causing to be procured a consumer report for employment purposes, unless:

> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement

of the report by that person.

15 U.S.C. § 1681b(b)(2)(A). When a violation is "willful," the FCRA provides for statutory damages "of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(1)(A).

In January 2015, Plaintiff applied for a job with Defendant. (FAC ¶ 14.) "As part of the application process, [Defendant] procured or caused to be procured a consumer report regarding Plaintiff from HireRight." (*Id.*) Plaintiff alleges that Defendant "willfully" violated the FCRA when it procured or caused to be procured a consumer report without making the required disclosure "'in a document that consists solely of the disclosure.'" (FAC ¶¶ 15-16 (quoting 15 U.S.C. § 1681b(b)(2)(i)).) Specifically, Plaintiff signed a four-page disclosure and authorization form; the form's first page states that Defendant may request a consumer report assembled by HireRight or another consumer reporting agency, and explains the type of information that may be contained in the background report. (*See* Dkt. No. 7-1, Exh. A at 1.) The form's second and third pages are entitled "Additional State Law Notices," and contain notices relating to consumer reports for applicants, employees, or contractors in California, Maine, Massachusetts, Minnesota, New Jersey, New York and Washington state. (*Id.* at 2-3.) The last page is entitled "Authorization of Background Investigation," which includes a consent to the preparation of a background check. (*Id.* at 4.) The second paragraph contains the disclaimer: "I also understand that nothing herein shall be construed as an offer of employment or contract for services." (*Id.*)

On October 6, 2015, Defendant moved to dismiss Plaintiff's claim, on the grounds that: (1) Defendant's disclosure complied with FCRA requirements, and (2) challenging Plaintiff's ability to show that Defendant "willfully" violated the FCRA. (Dkt. No. 7 at 2.) On December 4, 2015, Judge Grewal denied Defendant's motion to dismiss, finding that Plaintiff had adequately alleged a willful violation. (Dkt. No. 24 at 1, 4-5.)

On December 28, 2015, Defendant moved to stay the case pending the Supreme Court's decision in *Spokeo, Inc. v. Robins*. (Dkt. No. 27.) The parties then stipulated to stay the case. (Dkt. No. 28.) After the Supreme Court issued its decision in *Spokeo*, Judge Grewal lifted the stay on May 20, 2016. (Dkt. No. 34.) The case was then reassigned to the undersigned. (Dkt. No. 36.)

On November 22, 2016, the parties informed the Court that the case had settled. (Dkt. No.

53 at 1.) Plaintiff then filed a motion for preliminary approval of the class action settlement. The settlement was for $400,000; once the attorney's fees, costs, incentive award, and class administration costs were excluded, the net settlement fund was estimated to be $212,167, resulting in a $13.82 recovery per class member. (Dkt. No. 63 at 5.) This amount represented an 86% discount from the minimum statutory penalty.

On February 17, 2017, the Court requested supplemental briefing from the parties, including on "why a discount of over 70% is warranted in this case, *i.e.*, the specific risks faced by Plaintiff in moving forward with this case, the complexity and likely duration of further litigation, and the risk of maintaining class action status." (Dkt. No. 66 at 2.) On March 2, 2017, the parties filed a joint supplemental brief. In discussing the proposed discount, the parties identified the Ninth Circuit decision, *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017), which had been decided on January 20, 2017, after the parties entered into the settlement agreement and filed the motion for preliminary approval. (Dkt. No. 68 at 10-11.) Defendant argued, however, that the Court should not consider *Syed* because it was a "'post-settlement change in the law,'" which would "'not alter the binding nature of the parties' settlement agreement.'" (*Id.* at 11 (quoting *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1089 (6th Cir. 2016).) Further, the parties disputed whether *Syed* affected whether the settlement was within the range of reasonableness. (*Id.* at 12-13.)

On March 24, 2017, the Court denied the motion for preliminary approval. First, the Court considered whether the proposed settlement fell within the range of reasonableness based on pre-*Syed* law, stating that based on Judge Grewal's prior ruling, "it is not clear to the Court that an 86% discount was justified by the risks in this case." (Ord. at 6-9.) Second, the Court considered whether the proposed settlement fell within the range of reasonableness based on *Syed*. (Ord. at 9-12.) The Court addressed Defendant's contention that the Court should not consider *Syed*, explaining that its consideration of *Syed* did not go to "whether the settlement agreement is binding or in violation of Rule 23," but "the strengths and weaknesses of Plaintiff's case, which in turn directly informs whether the settlement -- which includes an 86% discount on the value of the class's claims -- fall within the range of reasonableness." (*Id.* at 10.) The Court found it was appropriate to consider *Syed*, and concluded that in light of this binding authority, Plaintiff's case

3

1  "[wa]s not so weak so as to justify an 86% discount." (*Id.* at 12.)

2  On May 1, 2017, Defendant filed the instant motion for leave to file a motion for reconsideration of the Court's order denying preliminary approval. On May 3, 2017, Plaintiff filed an opposition. (Plf.'s Opp'n, Dkt. No. 80.) On May 8, 2017, Defendant filed a reply. (Def.'s Reply, Dkt. No. 81.)

## II.     LEGAL STANDARD

District courts possess the "inherent procedural power to reconsider, rescind, or modify an interlocutory order" before entry of final judgment. *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001); *see also* Fed. R. Civ. P. 54(b) (stating that any order or decision which does not end the action "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). Reconsideration is appropriate where: (1) a material difference in fact or law exists from that which was presented to the court before entry of the interlocutory order for which reconsideration is sought; (2) the emergence of new material facts or a change of law after the time of the order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before the interlocutory order. (Civil L.R. 7-9(b).)

## III.    DISCUSSION

### A.     Post-Settlement Law

In support of its motion for leave, Defendant first argues that it never had an opportunity to brief "whether the Court can or should consider subsequent changes in decisional law in evaluating whether to preliminarily approve a class settlement," as the Court's request for supplemental briefing was focused on why the settlement fell within the range of reasonableness. (Def.'s Mot. at 2.) Instead, Defendant asserts that it was "only at the hearing that this issue was articulated." (*Id.* at 3.) The Court disagrees. Consideration of *Syed* went directly to whether the settlement fell within the range of reasonableness -- and indeed, was substantially discussed in the joint supplemental briefing -- which means that Defendant was on notice that this was an issue that needed to be addressed. (*See* Dkt. No. 68 at 10-15, 19-20.) Furthermore, Defendant did, in fact, address the issue, arguing in the joint supplemental brief that the "post-settlement change in

4

the law does not alter the binding nature of the parties' settlement," and contending that the Court should not consider *Syed*. (Dkt. No. 68 at 11 (internal quotation omitted).) Thus, it is not the case that whether the Court could consider *Syed* was only addressed at the hearing; it was actually raised in the briefing itself.

Even if Defendant had not raised the issue in the joint supplemental brief, the authority cited by Defendant in support of its motion for leave is not persuasive. As an initial matter, none of the cases cited by Defendant are binding on this Court. Moreover, the Seventh Circuit cases do not suggest that courts must consider only the state of the law at the time the settlement agreement was entered into, but "the state of the law as of the time it was presented to the district court for approval." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 322 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *Dawson v. Pastrick*, 600 F.2d 70, 76 (7th Cir. 1979). In so deciding, both *Armstrong* and *Dawson* focused on what the law was at the time the district court *approved* the settlement, not what the law was when the motion was *filed*. For example, in *Dawson*, the Seventh Circuit rejected the consideration of a Supreme Court opinion that "was handed down on the very same day that the district court gave its *approval* to this consent decree." 600 F.2d at 76 (emphasis added). To "allow post-*approval* changes or clarifications in the law to upset a settlement would be contrary to the established policy of encouraging settlements . . . ." *Id.* (emphasis added). Similarly, in *Armstrong*, objectors to the settlement agreement relied on a Fifth Circuit decision that was pending before the Supreme Court; the Seventh Circuit rejected this as a basis for setting aside the settlement, explaining: "To allow reevaluation of a settlement on the basis of decisions reached after its approval would undercut th[e] motive for settlement. In addition, since our function is only to determine whether the district court abused its discretion, we must evaluate its actions as of the time of approval and not in light of post-approval changes in the law." 616 F.2d at 322 n.25. In other words, the Seventh Circuit's focus was not on what the law was at the time of the settlement agreement or the filing of the motion, but what the law was when the settlement agreement was approved by the district court.

While Defendant cites to two cases which found that "a settlement must be evaluated in

5

light of the law applicable at the time of settlement," both cases relied on *Dawson* for this proposition. *In re Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495, 506 (2009); *Shepherd Park Citizens Ass'n v. Gen. Cinema Beverages of Washington, D.C.*, 584 A.2d 20, 24 (1990). As discussed above, however, *Dawson* did not conclude that the district could only consider the law at the time of the settlement, as it focused on what the law was at the time the court approved the settlement. Thus, neither *In re Sutter Health* nor *Shepherd Park Citizens Ass'n* is persuasive.

Finally, the Court notes that it was skeptical of the proposed 86% discount even without considering *Syed*. In its analysis of the range of reasonableness based on *pre-Syed* authority, the Court explained that based on Judge Grewal's ruling on Defendant's motion to dismiss, the 86% discount did not appear to be justified. (Ord. at 8.) Thus, even if the Court was not to consider *Syed*, the Court likely would not have preliminarily approved the settlement. The Court therefore declines to allow Defendant leave to file a motion for reconsideration on this basis.

### B. Standing

As a second basis for leave to file a motion for reconsideration, Defendant cites to the intent of the defendant in *Syed* to file a petition for writ of certiorari with the Supreme Court, based on whether the injury in fact requirement for Article III standing was satisfied. (Def.'s Mot. at 4.) In their joint supplemental briefing, however, the parties never raised standing in explaining why a 86% discount was warranted. Likewise, the Court did not consider the standing discussion in *Syed* in denying the motion for preliminary approval. Furthermore, the fact that the *Syed* defendant intends to file a petition for writ of certiorari is not a material change in law or fact, particularly when the petition has not yet been filed, let alone accepted by the Supreme Court. The Court therefore concludes that this reason does not warrant giving Defendant leave to file a motion for reconsideration.

///
///
///
///

## IV. CONCLUSION

For the reasons stated above, the Court DENIES Defendant's motion for leave to file a motion for reconsideration.

IT IS SO ORDERED.

Dated: June 7, 2017

_____
KANDIS A. WESTMORE
United States Magistrate Judge